# Richmond.

MEDLEY V. MEDLEY AND ALS.

JANUARY 7th, 1886.

1. EXECUTORY DEVISES—*Transmissibility.*—Such devises are not mere possibilities, but substantial interests, and as respects transmissibility, stand on the same footing with contingent remainders. If the contingency whereon the vesting depends, is a collateral event irrespective of attainment to a given age and surviving a given period, the death of the devisee pending the contingency, works no exclusion, but simply substitutes and lets in the devisee's representative. 3 Lom. Dig. 324.

2. IDEM—*Case at bar.*—Testator devised lands to G., but if G. died without having had lawful issue, the lands to be divided between testator's four daughters. G. died without having had such issue. M., one of the daughters, died before G., leaving children, all of whom died before G., under age and without issue, except one, who attained majority, but died intestate and without issue. M.'s husband, L., survived her, and all their children, and died intestate, after G.

HELD :

> The executory devise to M. was transmitted by descent to her children, and so to the survivor of them, and at his death, intestate, to his father, L., and at L.'s death intestate, to his heirs-at-law.

Appeal from decree of circuit court of Halifax county, entered April 6, 1881, in the chancery suit therein pending, wherein Lucy V. Medley, devisee of Granville C. Medley, deceased, was complainant, and Rebecca A. Ballou, Solomon Lea, and others, heirs-at-law of Lorenzo Lea, deceased, were defendants.

The decree of the circuit court being against the complainant, Lucy V. Medley, she obtained an appeal to this court.

Opinion states the case.

*John W. Riely* and *Carrington & Fitzhugh,* for the appellant.

*Wood Bouldin, Jr.,* and *Guy & Gilliam,* for the appellees.

LEWIS, P., delivered the opinion of the court.

The controversy arises out of the following facts: By the sixth clause of his last will and testament, Isaac Medley devised to his son, Granville, certain lands as follows: "I devise to my son, Granville C. Medley, my lands lying between Mirey creek," &c., "bounded," &c. "I also devise to my son, Granville, all the lands that I have devised to my wife during her life or widowhood, the possession whereof the said Granville is to be entitled to at the termination of the estate so devised to my wife by her death or marriage, which ever shall first happen. If my son, Granville, shall die without having had lawful issue of his body, the lands so devised to him are to be divided among those as hereinafter provided." And by a subsequent clause of the will, the testator directed as follows: "All the other lands belonging to me not mentioned in this will, together with all my estate of every kind not otherwise disposed of, I direct to be sold. The proceeds of said sale, and whatever may be due me, I appropriate to the payment of my debts; and whatever surplus may remain, I give to be equally divided among my four daughters, above named, * * likewise the lands devised to my son, Granville, should he die without having had issue as aforesaid."

The four daughters referred to are the same persons referred to in the sixth clause of the will by the words "those herein-

after provided," and are Rebecca A. Ballou, Martha C. Jackson, Sarah D. Burks, and Mary A. Lea.

All the legatees mentioned in the will survived the testator, but Mrs. Lea, one of the four daughters, died in the lifetime of the son, Granville. She left several children, all of whom died without issue in the lifetime of Granville, and under age, except the last survivor, who died intestate after having attained the age of twenty-one years. Lorenzo Lea, the husband of Mrs. Lea, and father of her children, survived her and all their children, and died intestate after Granville Medley, leaving as his heirs-at-law a brother and the descendants of three deceased brothers.

After the death of Granville, who died without having had lawful issue, his widow asserted a claim to dower in the lands which had been devised to him by Isaac Medley, and the decree of the circuit court sustaining her claim, was, on appeal to this court, affirmed. *Medley* v. *Medley*, 27 Gratt. 568.

After the case went back to the circuit court, the widow having consented to commute her right of dower and to accept the value thereof in money, the lands were decreed to be sold. And the questions we have to determine are, first, whether the deceased daughter, Mrs. Lea, took under the will of Isaac Medley a descendible interest in the lands devised to Granville; and if so, second, who are now entitled to that interest? The circuit court, by its decree, held the heirs-at-law of Lorenzo Lea to be entitled; and from that decree this appeal has been taken.

It will be observed by the terms of the will, the interest of the daughters, as executory devisees, was not made dependent on all, or any of them, surviving their brother, Granville, or on any other contingency than the dying of the latter without having had lawful issue; and, conseqently, at the death of Mrs. Lea her interest was transmitted by descent to her children.

For a long time executory devises, which arose after the statutes of uses and of wills dispensing with the ceremony of livery of seisin, appear to have been little understood; but the law concerning them is now well settled. They are not mere possibilities, but substantial interests, and in respect to their transmissibility, they stand on the same footing with contingent remainders. On this point the authorities are agreed, and an examination of the cases will show that no doubt respecting it has been entertained within the last century.

"An executory interest," says Fearne, "whether in real or personal estate, is transmissible to the representative of the devisee, when such devisee dies before the contingency happens; and if not before disposed of, will vest in such representative when the contingency happens." Fearne on Rem. 44.'

Undoubtedly, if the limitation over is to children who shall attain a certain age, or survive a given period or event, the effect of the death of any child pending the contingency, will be to strike the name of such deceased child out of the class of presumptive objects. "But where," says Jarman, "the contingency on which the vesting depends is a collateral event, irrespective of attainment to a given age and surviving a given period, the death of any child pending the contingency works no such exclusion ; but simply substitutes and lets in the legatee's representative for himself." 1 Jarman on Wills, 861. See also 1 Lom. Ex'ors, marg. p. 319 ; 4 Kent's Comm. 261–284; 3 Lom. Dig. 324; 2 Min. Insts. 389.

These views are fully supported by the adjudged cases to which the learned counsel for the appellees have referred.

. Thus, in *Pinbury* v. *Elkin,* 2 Vern. 758–766, decided in 1719, a testator by his will gave all his lands and money to his wife, and directed that if the wife should die without issue by him, then £80 to go to his brother after the wife's death. The testator died without issue, and afterwards the brother

died testate in the lifetime of the wife; and the question was, whether the legacy of £80 passed by the brother's will as therein directed. According to the report of the case the chancellor at the first hearing "seemed doubtful whether the devise of the £80 was not personal to the brother if he survived the widow." But at the final hearing it was adjudged that the legacy under the brother's will was good. See also *Withers* v. *King*, 3 Bro. P. C. 135; *Wilson* v. *Bagly*, Id. 195; *Selwin* v. *Selwin*, 1 W. Bl. 252; *Barnes* v. *Allen*, 1 Bro. Chy. 181.

In *Jones* v. *Roe*, 3 T. R. 88, decided in 1789, the question was as to the devisability of an executory interest, it being conceded in the argument that such an interest was transmissible by assignment and also by descent. The court of common pleas held that it was also devisable; and on writ of error to the Court of King's Bench, the judgment was affirmed.

"It is high time," said Lord Kenyon, C. J., in delivering judgment, "that this question should be understood to be completely at rest. It affects a great deal of the real property in this country, and miserable indeed would be the state of property here if such a question as this still remained unsettled." And in the course of his opinion his lordship referred to the case of *Goodtitle* v. *Wood*, in which case there was a devise to A., and if he dies before twenty-one then to B. and his heirs. B. died, and then the contingency happened by the death of A. before twenty-one. And quoting, with approval, the language of Willes, C. J., in that case, he said: "The question is, whether an executory devise be transmissible? Most of the old cases which hold that they are not devisable were before executory devises were well-established; but that doctrine is now exploded. Executory devises are not naked possibilities, but are in the nature of contingent remainders; and there is no doubt but that such estates are transmissible, and, consequently, devisable."

The other judges concurred in the views of the Lord Chief Justice. Buller, J., remarked, that "from the time when executory devises were first known in the law, they have been attacked in every possible shape, and yet it is observable that the attack has, as often as it has been made, in modern times, at least, always failed. The true reason why they have been thus attacked is to be found in every modern case which treats of the subject, namely: that in early times when the question was first discussed, the nature of an executory devise was not understood. It was first contended that an executory devise was not transmissible; then that it was not assignable; then that it was not descendible; and, lastly, that it was not devisable." To the same effect was the opinion of Lord Mansfield. *Roe* v. *Griffiths*, 1 W. Bl. 605; *Selwin* v. *Selwin, supra.*

Nor are the cases to which the appellant refers in conflict with these decisions. Thus, for example, in *Jackson* v. *Noble*, 2 Keen, 590, the interest of the executory devisee was dependent on the contingency that he or such child or children, as he might happen to have, should survive the first taker. But as he died without issue in the lifetime of the first taker, it was held by the master of the rolls that the limitation over, was incapable of taking effect, and, consequently, the estate remained undefeated in the latter.

And here, it may be observed, there is a distinction between a remainder created by will and an executory limitation. If, in the first case, the remainder cannot take effect, the property, according to the circumstances of the particular case, will either fall into the residuum or remain undisposed of; whereas, in case an executory limitation cannot take effect, the estate will, ordinarily, unless the will otherwise directs, continue in the first taker, as was held in *Jackson* v. *Noble*, and other similar cases.

It is contended, however, by the appellant, that if the devise

over to Mrs. Lea was capable of taking effect at the death of Granville Medley, her interest could devolve on those only who were *her* heirs-at-law at the time when that contingency happened. And in support of this position reference is made to the case of *Barnitz's Lessee* v. *Casey,* 7 Cranch, 456.

In that case the rule of the common law was stated to be, that the interest of the first devisee, if he chance to die before the contingency happens, "does not vest absolutely in the first heir [of such devisee], so as, upon his death, to carry it to his heir-at-law who is not heir-at-law of the first devisee; but it devolves from heir to heir, and vests absolutely in him only who can make himself heir to the first devisee at the time when the contingency happens, and the executory devise falls into possession."

This undoubtedly was the rule at common law, and was applied in that case, because, in the opinion of the court, the case was not within the Maryland statute of descents, which it was called upon to construe. In other words, it was a *casus omissus*, and, therefore, governed by the rules of the common law, which, being derived from the feudal law, required the heir to be of the blood of the first purchaser.

But by our statute of descents, passed in 1785, the common law on this subject has been totally abrogated, as being repugnant to the spirit of our republican institutions, and a system intended to embrace every possible case that can arise, established in its stead. This was declared in *Brown* v. *Turberville,* 2 Call, 390, by Judge Pendleton, who was a member of the committee that drafted the act of 1785, and by Judge Tucker, in *Templeman* v. *Steptoe,* 1 Munf. 339, and it was so decided in *Davis* v. *Rowe,* 6 Rand. 355.

In the last mentioned case, Judge Carr, in his opinion, used this emphatic language: "The framers of our law looked at the common law canons of descent to avoid, not to imitate.

To pull down, not to build up. All its principles are violated; its land-marks removed; its fences broken down; its traces obliterated. While these marks of reprobation would seem (even if our act were confessedly defective) to forbid our resorting to this exploded system to supply the defect, such resort is entirely unnecessary; for I insist that our act is a complete and perfect whole, containing within itself a provision for every case that can arise." See also *Garland* v. *Harrison,* 8 Leigh, 368.

By that act it is enacted as follows: "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, as are not aliens, in the following course: First. To his children and their descendants. Second. If there be no child, nor the descendant of any child, then to his father. Third. If there be no father, then to his mother, brothers and sisters and their descendants," etc. Code 1873, ch. 119, section 1.

And by the ninth section of the statute, as it now stands in the Code, which was passed in 1790, it is provided, that "if an *infant* die without issue, having title to real estate derived by gift, devise or descent from one of his parents, the whole of it shall descend and pass to his kindred on the side of that parent from whom it was so derived—if any such kindred be living at the death of the infant. If there be none such, then it shall descend and pass to his kindred on the side of the other parent." And this is the only instance in which respect is paid to the blood of the first purchaser.

It is very clear, therefore, from these statutory rules of descent, 1. That the interest of Mrs. Lea, at her death, descended to her children; 2. That, as all the children died under age and without issue except the last survivor, who died intestate after having attained his majority, but without issue, it passed, at the death of the latter, to the father, Lorenzo Lea; and 3.

That, at the death of Lorenzo Lea, intestate, it passed to his heirs-at-law, as decreed by the circuit court.

The position of the appellant, that the case is not within the statute because Mrs. Lea, at the time of her death, *had no title* to real estate under the will of Isaac Medley, is altogether untenable. The intention of the legislature, as we have seen, was to establish a system perfect and complete in itself; and although the language employed is, perhaps, in its strictest sense, not so comprehensive as that used in respect to wills and conveyances *inter vivos,* as to which it is enacted that "*any interest in* or *claim to* real estate may be disposed of by deed or will" (Code, ch. 112, sec. 5); yet it is sufficient, we think, to accomplish the purpose which the legislature had in view. Indeed, so plainly does the intention appear, that in *Browne* v. *Turberville, supra,* Judge Lyons declared that, according to the settled rule of construction, it ought to be followed, although the interpretation may seem contrary to the letter of the statute. See also *United States* v. *Freeman,* 3 How. 565; *Atkins* v. *Disintegrating Co.,* 18 Wall. 301; *Chalmers* v. *Funk & Son,* 76 Va. 717.

But is not the present case within the letter of the statute? There are estates in possession and estates in expectancy; and consequently a man, as for example a reversioner or remainderman, may have title to property, and yet not the right to the present possession or enjoyment thereof. In other words, he may have title, though not a *complete* title, which embraces, it is said, three several stages or degrees—namely: 1. The mere possession; 2. The right of possession, which may be either apparent or real; and 3. The mere right of property. 2 Min. Insts. 447; 2 Bl. Comm. 195. But, obviously, the term "title" was not used in the statute in this strict and technical sense, but rather in the more comprehensive sense of any interest in an estate of inheritance, to which an intestate may die entitled.

In *Jones* v. *Doe, supra,* to the argument that the interest of an executory devisee was not devisable, Lord Kenyon replied: "If we consider the statute of wills,   *   *   it is matter of astonishment that this question should ever have arisen; for it enables persons *having* any manors, lands, &c., to devise—which must mean *having an interest in* the lands," etc.

The same reasoning applies with equal if not greater force to a case like the present.   For if such an interest will pass by devise as from one *having lands,* so, if it be an estate of inheritance, it will pass by descent as from one *having title* to real estate.   And of this opinion was Judge Lomax, who says: "If the expression having title were, in the construction of the act, to·be confined to title in its most restricted sense, where there is the *conjunctio seisinæ et juris*—a complete title—the consequence would be that, as to incomplete titles, there would be no law of descents, or a law varying from that where the title is complete.   Such inconsistencies could not be contemplated by the legislature.   The common law rule *seisina facit stipitem* may now, therefore, be regarded as abrogated in Virginia; and estates of intestates, whether in possession or resting in title, whether present or reversionary, will all of them descend to the same heir, without any regard to the *seisin* of the ancestor."   1 Lom. Dig. 594.

We are not aware of any adjudication in which the correctness of these views has ever been questioned.   They are decisive of the present case, and require an affirmance of the decree appealed from.

DECREE AFFIRMED.