# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HEUSER, TRUSTEE AND RECEIVER, AND OTHERS
## v. BELVIN AND OTHERS.

### January 13, 1916.

1. CONTRACTS—*Sale of Land—Approval of Court—Upset Bid—Disposal of Surplus—Case in Judgment—Judicial Sale.*—Where the assent of a court of equity is necessary to a sale of land on account of the infancy of one of the parties, but before such sale is ordered the other parties in interest, all of whom are competent to contract, enter into a contract to sell the land to a purchaser "subject to the sanction of the court," at an agreed price, which was the best offer they had been able to obtain, and more than they had expressed themselves as willing to take, and have agreed to unite with the officer of the court in making a deed to the purchaser, and the purchaser has in every respect acted fairly, and has signed the contract binding himself to pay the price agreed, and is ready, able and willing to perform his part of the contract, the contract is binding upon them, and if upon an upset bid being filed, the land is sold at an advanced price, the purchaser is entitled to the share of such parties of the advance, less their share of the costs.

Appeal from a decree of the Circuit Court of Wythe county, in which there was a decree in favor of a purchaser at a private sale of the interest of the adult parties in a tract of land. The adult parties interested appeal.

*Affirmed.*

The opinion states the case.

*H. M. Heuser* and *Harless & Colhoun,* for the appellants.

*W. B. Kegley* and *E. Lee Trinkle,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The motion of appellee, E. Lee Trinkle, to dismiss the appeal, for the reasons that W. D. Belvin, Jr., Lyle R. Belvin, Marjorie

R. Belvin and Constance L. Belvin are not parties to the petition therefor, and H. M. Heuser, as receiver and as trustee, has no interest entitling him to prosecute the appeal, is without merit and is, therefore, overruled.

The material facts leading up to the final decree in the cause complained of are as follows: In 1882 certain relatives of W. D. Belvin purchased for him a farm in Wythe county, Va., containing 190 acres, which farm was, by deed dated April 2, 1882, executed by J. M. Snavely and wife, for the consideration of $5,500, conveyed to Witcher Jones, trustee for W. D. Belvin, in trust "for the use and benefit of W. D. Belvin for his life, and at his death to be conveyed by the trustee to such person or persons as should then be the legal heirs of said W. D. Belvin, in such portion as they would be entitled to by law if said Belvin had owned the land in fee, and had died intestate." W. D. Belvin was not provident, and domestic differences arose between him and his wife, culminating in a divorce from bed and board about the year 1902, and the decree provided for alimony at the rate of $225 *per annum* to Mrs. Belvin in addition to costs and allowances for attorney's fee. About the time the divorce suit was pending two creditors' suits against W. D. Belvin were brought, in which suits, consolidated, the farm held by Jones, trustee, was rented out to satisfy the debts of Belvin and to pay alimony to his wife, and the annual rental for some of the earlier years amounted to $300, but this was later reduced on account of the condition of the property and the terms under which it had to be rented, so that the prevailing rental ran for a number of years at $225 *per annum;* the result being that all of the proceeds of rental were taken up in the payment of the debts involved in the creditors' suit, only a small amount having been paid on alimony, and the unpaid alimony having accumulated to about $1,100 or $1,200. The farm had been in the hands of renters for a number of years before it was rented out by the court, had become so much run down from year to

year that it would have taken several years and a considerable outlay of money to restore it to its former value. No hay had been made upon it for years; the timber was practically gone; inside fences were of no account; there was scarcely any grass; fruit trees had all died; all outbuildings were gone, and the dwelling house was very dilapidated; porches rotted down; the roof of the dwelling not good; all guttering and spouting were off; and the windows and doors were in bad condition and some of the floors were sprung.

The condition of the wife and children (some of whom were living with their mother) was that the debts of the father and costs of the creditors' suits, taxes and expenses of such repairs as were made upon the farm had so depleted the revenue from rent derived therefrom that practically nothing had been paid on the alimony decreed to Mrs. Belvin, and the amount of alimony due had accumulated, as remarked, to about $1,100 or $1,200, without any hope of its being paid, or of the current revenues from the farm being sufficient to pay the alimony that might accrue from year to year. The condition of W. D. Belvin, the husband and father, was that he was separated from his wife and children. He had no home, and being without means of support, and an old Confederate soldier, he had finally drifted to the Soldiers' Home in Richmond to receive such care and comfort as the bounty of the State could provide for him.

In these circumstances, and as the price of land in the vicinity of the farm had risen since the original purchase of it, so that it was thought that an investment of the proceeds of its sale in some other form would prove more beneficial to all concerned, Mrs. Belvin and her children became desirous of selling the farm, with the view of relieving the embarrassing situation described and putting the investment in some other form. W. D. Belvin at first did not favor a sale of the farm, as he had an exaggerated idea of its value, and a fanciful notion that the land was underlaid with some kind of valuable

minerals, but his reluctance to sell was finally overcome, by reason that he himself was not in a position to prevent a sale, or show that it would not be advantageous to all concerned. Another reason was, a prospect that he might derive something out of a sale of the land by a contemplated purchaser, E. Lee Trinkle (as hereinafter explained) at an advance, if a sale to Trinkle were consummated, and the land placed in a condition to be handled to advantage. He realized also that the increased income from the fund arising from the sale of the farm would, when reinvested or put at interest, after a few years, produce sufficient to give him a small surplus over and above the alimony decreed to his wife, to be enjoyed by himself.

The trustee in the deed under which the title to the property was held, Witcher Jones, had been dead several years and H. M. Heuser was substituted trustee in his stead. Heuser who had been acting as receiver of the court in said chancery cause, and as attorney for Mrs. Belvin and her children, took the view that a sale of the property would be to the advantage of all concerned, as appears from certain letters written by him to W. D. Belvin appearing in this record as exhibits "Heuser No. 1" and "Heuser No. 2." After these letters were written, the matter of the proposed sale of the property for a change of the investment was taken up by the brother of W. D. Belvin with appellee, E. Lee Trinkle, resulting in a conference at Richmond, at which an understanding was reached that the property might be sold, and that Trinkle should purchase it. The best offer that could be obtained for the property at that time, as shown by Heuser's letter, Exhibit No. 1, was something like $11,000—that is, there was a prospect to sell the property for something like $11,000, which Heuser considered a good price. There was some competition by the parties in the neighborhood who desired to purchase the land, or a part of it, surpassing the expectations of everyone. This competition finally resulted in an offer of $13,000, $1,000 in excess of the amount at which Heuser was authorized to sell by a

power of attorney he held from all parties interested, and $2,000 in excess of what he considered a good price for the land, and which he had advised W. D. Belvin, as well as the other parties in interest, to take. Trinkle was not concerned in any of the competitive bidding bringing the offer up to $13,000, but after that offer had been made, and when it appeared that it was the best offer the trustee and receiver could get (as Trinkle had notified the receiver and trustee to obtain the best offer he could), Trinkle advanced the offer to $13,010. Not only was this considered an extraordinary good price by the trustee and receiver and the parties immediately concerned, but it was so considered by all of the witnesses who testified in this case as to the value of the property. In fact, all considered it an unusually good price for the property.

For the purpose of effecting a sale, Lula R. Belvin, the wife, and the five children of W. D. Belvin, by power of attorney dated November 4, 1913, authorized Heuser to take proper steps in court to sell the property, and as their attorney in fact, to sell and convey for them and in their name all of their right, title and interest in and to the said property, provided it be for a sum of not less than $12,000, and that the proceeds of the sale be held as the property was held under the deed of trust aforesaid; and in order to make such authority effectual, they gave to said Heuser "full and complete power in the premises to do, execute, acknowledge, seal, deliver, receipt, acquit, proceed with and finish in all things in as ample manner as they might do if personally present, ratifying and confirming all lawful acts done by our said attorney," etc.

Pursuant to this power of attorney, a contract in writing was entered into between Heuser, as the duly authorized agent and attorney for Lula R. Belvin and her four adult children, and Heuser, as receiver of the court and trustee for W. D. Belvin, and the said W. D. Belvin in his own right, parties of the first part, and E. Lee Trinkle, party of the second part, by which the parties of the first part, after sundry recitals, and particu-

larly the offer of the party of the second part to pay to Heuser, as receiver and trustee, the sum of $13,010, to be held and handled by him upon the terms set forth in the Witcher Jones deed, agreed to sell and convey to the party of the second part the property referred to, at the price of $13,010 cash, and agreed that a proper suit should be instituted for the purpose of carrying the sale into effect, and that, in the deed which the court would be asked to order to be made, the parties of the first part to the contract would join. The power of attorney under which Heuser was acting was attached to and made a part of the contract just adverted to, which was made subject to the sanction of the Circuit Court of Wythe county.

Basing them upon the said contract, Heuser, for the wife and adult children of W. D. Belvin, and the wife and adult children of W. D. Belvin filed their respective petitions in the said chancery cause pending in the Circuit Court of Wythe county, in each of which petitions petitioners set out at length the condition of the property, the condition of the parties interested therein and the reasons why the property should be sold at the price and upon the terms set forth in their contract with Trinkle, made an exhibit ("A") with their respective petitions, and prayed the court to authorize, confirm and ratify such a sale of the property as had been agreed on in said contract, and a reinvestment of the proceeds for the use and benefit of the parties interested therein, under the same conditions and limitations set out in the "Witcher Jones" deed and as the statute provides: the petition of the wife and adult children of W. D. Belvin being sworn to. To these petitions the separate answer of W. D. Belvin (Sr.), and of Minnie W. Belvin, his infant child, in her own right and by her guardian *ad litem,* were duly filed and depositions were taken and filed, showing that the price to be paid by Trinkle for the property was a fair price therefor; but before these petitions, together with the exhibits therewith, had been actually filed in court and the

depositions of wtinesses taken and filed in support of the petitions, one W. E. Snavely offered an advanced bid of $15,250 for said property.

Upon the hearing of the cause upon said petitions and the answers of W. D. Belvin and the infant defendant and of her guardian *ad litem,* the depositions of witnesses referred to, and also the answer of Trinkle asking the court not to receive the bid of said W. E. Snavely and claiming that he had a binding contract with the adult children of W. D. Belvin interested in the property, and that he was certainly entitled to whatever would ultimately come to said adults over and above his own bid of $13,010 if sold to other parties than himself; upon the replication of Heuser as receiver and trustee to the contention in the answer of said Trinkle that by a binding contract (Ex. A, *supra*) he had purchased the property in question from all the adult children of W. D. Belvin at the price of $13,010, subject only to the determination by the court of the question whether or not the property should be sold for a change of the investment therein originally made, and was entitled to whatever would ultimately go to said adult parties of the proceeds of the sale, if such sale was made at a price over and above the said sum of $13,010, the amount he had agreed to pay for it; and the court being of opinion that a sale of the property was proper independently of any admissions in the answers of the parties or otherwise, and that the rights of no one would be violated thereby, but that the interests of the beneficiaries under the deed by which the property was held would be promoted by a sale of it and a loan or investment of the proceeds under the direction of the court, on account of one of the parties interested, Minnie W. Belvin, being under the age of twenty-one years, ordered and decreed that H. M. Heuser, receiver and trustee in the cause, proceed to offer for sale the property in question at public auction, the advertisement to be made of the sale, time, place and terms thereof being prescribed in the decree, and that the bidding at the sale should be started at $15,250, the offer made for the property by W. E. Snavely.

Pursuant to the terms, etc., of said decree, Heuser, receiver and trustee, exposed the property to sale at public auction, at which sale the property was knocked off to W. E. Snavely and associates at the price of $21,150, which was reported to the court, and thereupon Trinkle, though not opposing a sale of the property to Snavely upon the terms thereof reported by Heuser, receiver and trustee, by petition filed in the cause again asserted his rights as purchaser of the property as evidenced by the contract, Exhibit "A" in the cause, so far as the interests of the life tenant, W. D. Belvin, and of the wife and adult children of the said W. D. Belvin were concerned.

Upon the final hearing of the cause, after certain pleadings had been filed by Heuser, as receiver and trustee, and by E. Lee Trinkle, the court considered the matter upon the entire record, and construed the contract of November 5, 1913, between the wife and adult children of W. D. Belvin and the said W. D. Belvin, as parties of the first part, and E. Lee Trinkle, party of the second part, to be a valid and binding contract so far as the interest of the parties thereto in the lands in the petition and proceedings mentioned were concerned, and that the price agreed to be paid by Trinkle for the land under the proof offered by petitioners themselves was a fair and reasonable price therefor, the decree then entered stating, "that the court should, and would, have decreed the sale and conveyance of the said property to the said E. Lee Trinkle at the said price of $13,010 in the absence of an advance bid, which advance bid was received because of the interest of the infant defendant, Minnie W. Belvin; and it further appearing that said purchaser (Trinkle) was able, ready and willing to comply with his said purchase, and that the said purchaser has not relinquished his rights under his contract, but has at all times insisted thereon, and such rights having been expressly reserved in decrees heretofore entered, the court is of opinion, and doth adjudge, order and decree that by virtue of said

contract and the matters and things arising thereafter, as appears from the record in the cause, the said E. Lee Trinkle became and is substituted in the place of W. D. Belvin and his adult children . . .. in and to the fund arising from the sale of said property, in excess of the sum of $13,010, the costs of suit and sale to be apportioned between the said sum and the excess of the purchase price of said property over $13,010, and further doth adjudge, order and decree that H. M. Heuser, trustee and received, do hold the fund arising from the sale of the Belvin farm, to-wit: the sum of $13,010, less the costs and expenses apportioned to this fund, viz: $733.35, leaving a net sum of $12,276.25 for the benefit of W. D. Belvin for life with remainder, as provided in the deed of J. M. Snavely and wife to Witcher Jones, trustee for W. D. Belvin, dated April 1, 1882; and that as to the residue of said fund, after deducting its proportionate part of the costs, amounting to $459.05, leaving the net sum of $7,581.95, the said E. Lee Trinkle voluntarily relinquishing in open court his right to the income thereof during the life of W. D. Belvin to the said W. D. Belvin, it is adjudged, ordered and decreed that the trustee and receiver do hold the said surplus for the benefit of W. D. Belvin for the term of his natural life, and it appearing that it was agreed between W. D. Belvin and E. Lee Trinkle that said Belvin should share equally with said E. Lee Trinkle in any profits which might be made by said Trinkle under his contract with H. M. Heuser, trustee and receiver, and Lula R. Belvin, et als. . . . it is further adjudged, ordered and decreed that the principal of said surplus, to-wit: the sum of $7,681.95, be held by the trustee and receiver for the benefit, share and share alike, of E. Lee Trinkle and W. D. Belvin as successors to and transferrees of the rights and interest of W. D. Belvin, Jr., Marjorie R. Belvin, Kyle R. Belvin, Constance L. Belvin, and for the benefit of any other legal heir or heirs of the said W. D. Belvin, the extent of such interests to be finally determined as of the

date of the death of W. D. Belvin, and in accordance with the terms and limitations of the deed from J. M. Snavely et als. to Witcher Jones, trustee, hereinbefore referred to. If the said fund, or any part thereof, be invested in other real estate, the same, or so much thereof as may be invested, shall be held in like manner as hereinbefore provided. Provided, however, that the arrearages of alimony shall all be paid out of the interest or income as a whole before any part thereof is paid to W. D. Belvin."

The petition of H. M. Heuser, receiver and trustee, and the four adult children of W. D. Belvin for this appeal from said decree, presents the single question whether or not the circuit court erred in construing the contract, "Exhibit A" supra, between appellee, E. Lee Trinkle, and the adult children of W. D. Belvin and W. D. Belvin to be a concluded contract fixing the price to be paid by appellee for the Belvin farm, and constituting appellee the purchaser of the property as a whole, conditioned only upon whether or not the court would order or approve the sale of the property; so that, if the court had declined to change the investment, then the contract would have been at an end, for the very objects of it would have entirely failed, and there would have been nothing to be done under it. The court, however, granted the prayer of the petitions that a sale of the property be approved, ratified and confirmed pursuant to and upon the terms, etc., contained in said contract, "Exhibit A," and decreed, as observed, that appellee, Trinkle, should stand in the place and stead of such of the children of W. D. Belvin as were parties to said contract, and as should survive W. D. Belvin—that is, the court only substituted appellee, Trinkle, to the rights of the adults in said surplus fund who had joined in said contract, the interests of the respective parties and their transferree, Trinkle, in the said surplus fund to be determined as of the date of the death of W. D. Belvin.

The depositions taken and filed by appellant in the cause,

and which were taken in the absence of the appellee, or any one representing him, he having purposely refrained from being present at the taking of the depositions, abundantly show that the price it was agreed by the adult parties in interest that appellee had bound himself to pay for said property was not only a fair and adequate price therefor, but was very considerably in excess of the price at which the parties to said contract had immediately before expressed their entire willingness to sell and had given authority to their attorney to sell and convey, they expressly agreeing to unite in the conveyance. Not only so, but the depositions and pleadings in the cause also show that it was at the solicitation of the adult parties in interest that the appellee became interested in a sale of the property, and finally agreed to purchase it, an inducement to these parties to enter into the contract with appellee to sell and convey the property to him being their desire that the property be disposed of and a sufficient consideration in the agreement on the part of appellee to purchase it and his ability to perform the contract on his part and pay the price for the property agreed on not only in excess of the price at which they had immediately before expressed their willingness to sell and convey, but to pay all the purchase money cash and take the property subject to the rights of the lessees or tenants thereon, which no other party proposing to buy the property had agreed to do.

This contract with appellee has all the elements of finality as to the parties on whose behalf it was executed, and it is not contended that appellee was contracting for the purchase of the separate interests of the parties to the contract in the property, the contract being for the purchase of the property, not a mere option or offer to purchase it, and, as between appellee and the adult children of W. D. Belvin, was a fixing of the price at which appellee bound himself to purchase it, so far as their interests were concerned, it being understood by all the parties that, in order to transfer and vest a complete title

in the purchaser, the intervention of the court was necessary
by reason of the interest of the infant party interested, and of
the remote contingent interests of the collateral kindred of
W. D. Belvin. No matter how much the property might have
depreciated in its salable value between the date of this contract
and the time when the court came to determine the question
whether or not the property should be sold for the purpose of
reinvestment, appellee would have been bound to take the
property at the price at which he had agreed to purchase it
"subject to the sanction of the court," and the court determined
that it was to the interest of all concerned to sell the property
for reinvestment, upon the terms at which appellee had agreed
to purchase it. The fact that the court, by reason of the inter-
est of the infant defendant, decreed that the property should
be offered for sale at public auction, the bidding to be started
at the amount of the upset bid made by W. E. Snavely, did
not change the relations existing between appellants and the
appellee with respect to their rights under the contract in
question, by which the appellants agreed to sell and the
appellee agreed to purchase the property as a whole at a price
agreed on, subject only to the ruling of the court on the
question whether or not there should be a sale and the proceeds
of the sale otherwise invested. Nor does the fact that appellee,
in his generosity, had agreed with W. D. Belvin that he should
share equally with appellee any profits which might be made
by the latter under his contract with Heuser, trustee and
receiver, *et als.,* for the purchase of the property, in the slightest
degree impair the binding force of the contract in question.
Nor is there the slightest proof of any fact or circumstances
in the record even tending to show that appellee dealt unfairly
with the parties with whom he contracted, or was actuated by
any other impulse or motive than to befriend and aid W. D.
Belvin and his wife and children. If there be profits growing
out of the transaction coming to appellee and W. D. Belvin,
such profits would not, in any sense, constitute a part of the

trust fund that had been theretofore represented by the Belvin farm. In any event, the profits, if any, would be profits upon a mutual contract between parties capable of contracting, and who had contracted, in relation to the subject matter of the contract. W. D. Belvin's interest in the Belvin farm, or the proceeds realized from its sale, was and is entirely separate and distinct from that of the remaindermen, his children who may survive him, and there is no relation of trust between them. That the interests of the parties to the contract, "Exhibit A," here in question were such as to enable them to enter into a valid and binding contract, fixing the price at which appellee should purchase the Belvin farm, cannot be successfully controverted. Section 2418 of the Code of 1904 provides: "Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence *in futuro,* by deed, in like manner as by will; and any estate which would be good as an executory devise or bequest, shall be good if created by deed."

In a note to said section it is said: "Under this section every conceivable interest in or claim to real estate, present or future, vested or contingent, and however acquired, may be disposed of by deed or will." Citing as authority a number of decisions by this court. See also *Howbert* v. *Cauthorn,* 100 Va. 649, 42 S. E. 683; *Lantz* v. *Massie,* 99 Va. 709, 40 S. E. 50, 7 Va. L. Reg. 538, and note 543.

The vice in the contention of appellants in this case is that they are measuring the rights of the parties to the contract with appellee which they are seeking to avoid, not by the facts as they existed at the time of the contract, but in the light of subsequent developments.

We are of opinion that the decree of the circuit court complained of is right, and it is affirmed.

*Affirmed.*