# Richmond

## Mrs. E. M. Copenhaver, et als. v. J. Sheffey Pendleton, et als.

November 13, 1930.

Present, Prentis, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

464

466

*James White Sheffey* and *Buchanan & Buchanan,* for the appellants.

*George F. Cook* and *William A. Stuart* for the appellees.

EPES, J., delivered the opinion of the court.

This cause is here on an appeal allowed Mrs. E. M. Copenhaver, Mrs. B. F. Buchanan, Mrs. P. C. March, James White Sheffey, John P. Sheffey and Miriam Sheffey from a decree entered June 13, 1929, by the Circuit Court of Smyth county in a suit brought by J. Sheffey Pendleton, complainant, against said appellants and Don P. Peters, Mrs. Eleanor Preston Watkins, Robert S. Preston, J. W. S. Peters, W. E. Peters, Mrs. H. B. Staley, Lynn Adams and Brainerd Adams, defendants.

All the parties to this suit are grandchildren of James W. Sheffey, a distinguished lawyer of Smyth county, Virginia, except Lynn Adams and Brainerd Adams (children of Eleanor, daughter of Mrs. Ellen Sheffey Rhea), who are his great-grandchildren.

Said James W. Sheffey died in 1876, leaving a will dated March 28, 1876, which was duly probated July 17, 1876. His widow, Mrs. Ellen J. Sheffey, survived him and died about 1887, leaving a will which; however, in the view that we take of this case, is immaterial here. He had seven children, and at the time of his death his heirs at law were as follows: His son, John P. Sheffey; his four living daughters, Ellen (Mrs. J. B. Rhea), Martha (Mrs. Robert Preston), Mary (the second wife of William E. Peters), and Virginia (Mrs. Henry B. Haller), his grandson, J. Sheffey Pendleton (the son of his deceased daughter, Lizzie, Mrs. A. G. Pendleton), and two grandsons, James W. Peters and W. E. Peters, Jr. (the sons of his deceased daughter, Margaret, the first wife of William E. Peters).

·The subject matter of this suit is a tract of land in Smyth county, Virginia, containing about 1,400 acres, designated as the "Bowen and Byars farms," which said James W. Sheffey, deceased, devised under the seventh paragraph of his will, which reads as follows, omitting the description of the land devised:

"7. I devise to my son-in-law, Henry B. Haller, as trustee, in trust for my daughter, Virginia W. Haller, his wife, for her life and her children, if any, at her death, all my tract of land * * known as the Bowen and Byars farms * * which estate the said Henry B. Haller, trustee, shall hold for the sole and separate use of the said Virginia W. Haller, during her life, and of her children, if any, after her death, free from the debts and liabilities of the said Henry B. Haller. My intention is that the said Henry B. Haller shall hold the said tract of land, upon the trusts declared, during his life, if my daughter, Virginia, should leave a child or children at her death, or during her life if she should die without children or descendants, free from liability for his debts and without accountability for rents, or for use and occupation of the land, so long as he shall remain solvent and free from embarrassment from debt, and shall provide amply for his wife and children, if any. If from any cause his wife and children, if any, are not so provided for, or shall be disturbed, or be in danger of being disturbed in the use, benefits and enjoyment of said tract of land, or the crops, rents or profits, or the stock thereon, then my will is that said trustee shall cease to hold free from accountability for rents, shall account for and settle upon his wife and children a reasonable rent for the estate, not exceeding five years, but for that term if he has held it so long, and that if necessary to secure the full enjoyment and benefit of the estate to his said wife and children another trustee be appointed upon motion in the Circuit Court of Smyth county."

Mrs. Virginia Haller died in 1928, never having had a child born to her. Her husband, Henry B. Haller, and her brother and all her sisters had predeceased her. Mrs. Haller left a will dated February 12, 1907, in paragraph No. 3 of which she devised as follows:

"Also to him" (Don Preston Peters), "James W. S. Peters, and to James W. S. Rhea, in trust, I leave whatever interest I may be found to have in the Bowen and Byars' farms left to me by my father's will, under the trusteeship of my husband. The said trusteeship of my husband lapses under my father's will, at my death. As he, my father, failed to devise, or make specific disposition of these lands, or farms, beyond my life interest, I desire these my nephews, as mentioned, to secure the court's interpretation, or construction, of my rights reversionary, if any, in these lands beyond my life interest, and should I be found, under the court's construction, entitled to them as a whole, or in part, I hereby authorize these, my three nephews, to dispose of my claim upon these lands to the best advantage." The proceeds thereof she then leaves to her husband for life with remainder to the children of her sisters.

Soon after Mrs. Haller's death, said J. Sheffey Pendleton brought this suit claiming to be the owner of an one-seventh (1–7) undivided interest in said 1,400 acre tract of land, and praying a partition thereof.

His contention is that after the devises made in said paragraph 7, there still remained a reversion in said tract of land, which was not devised by said will, which passed by inheritance immediately upon the death of James W. Sheffey to his then heirs at law.

The defendants, Don P. Peters, Mrs. Eleanor Watkins and Robert S. Preston, who are appellees here, filed an answer in the nature of a cross bill in which they took the position that paragraph 17 of the will of James W. Sheffey was a residuary devise, and that said tract of land, subject

to the life estate of Mrs. Haller and the contingent remainder devised to her children, if any, passed under said paragraph as a part of the residuary estate. Paragraph 17 of said will, so far as is here material, reads as follows:

"17. My executor is authorized to sell and convey any real estate I own which I have not devised and to sell any other personal property I may die possessed of, and after payment of all my just debts and reserving a compensation of five per cent on all sale or collections of debts due me, to divide the surplus, one-third to my dear wife and the other two-thirds equally among my children and their descendants, they taking the portion of their parent."

The defendants, J. W. S. Peters, W. E. Peters, Mrs. H. B. Staley, Lynn Adams and Brainerd Adams, filed no pleadings in the court below, and have not been represented before this court on this appeal.

The appellants filed their answer contending that after the devises made in paragraph 7 of said will what was left to the testator was not a reversion, but a naked possibility of reverter, which, upon the death of Mrs. Haller in 1928, passed by representation to the persons who would have been the heirs of James W. Sheffey had he died immediately after the death of Mrs. Haller, to-wit, to his thirteen grandchildren and his two great-grandchildren, the children of his deceased grandchild Eleanor, the mother of Lynn Adams and Brainerd Adams, each of said grandchildren taking an one-fourteenth (1-14) part, and each of said great-grandchildren an one twenty-eighth (1-28) part. The appellees further contended that paragraph 17 of said will is not a residuary devise.

While the provisions of paragraphs 7 and 17 of said will are the only provisions thereof specifically drawn into question in this suit the provisions contained in paragraphs 1, 5, 8, 9, 10, 11 and 16 of the will throw light upon the meaning of the language used by the testator in paragraph

17, and, therefore, so much of the provisions of these paragraphs as have a bearing upon the interpretation of paragraph 17 are below set forth.

By paragraph 1 of his will, James W. Sheffey devised to his wife, Mrs. Ellen J. Sheffey, for her life, three lots in the town of Marion with his dwelling house thereon, and also certain other lands lying north and south of said town.

By paragraph 5 he devised to his son-in-law, William E. Peters, trustee, a portion of the tract known as the "Stuart farm," "in trust for the sole and separate use of my daughter, Mary, during her life and at her death for the use of (her) children, if any, and should she die without children and descendants, then for the use of the said James S. Peters and Wm. E. Peters, Jr., and *their* (subject to the provisions herein made for said trustee)," which provision is that, subject to certain conditions somewhat similar to those contained in paragraph 8 below quoted, Wm. E. Peters may himself occupy and use said tract of land "free from accountability for rents, during his life."

Paragraph 8 reads in part as follows:

"8.  I devise to my son-in-law, J. Brainerd Rhea, trustee, in trust for the sole and separate use of my daughter, Ellen W. Rhea, his wife, during her life, and for the use of her children and their heirs at her death" (a certain described tract of land).  "My intention is that said J. B. Rhea shall hold said tract of land upon the trusts declared, during his life, free from liability for his debts, and without accounting for rents or for use and occupation of the land, so long as he shall remain solvent and free from embarrassment from debt, and shall provide amply for his said wife and children."

By paragraph 9 he devised to his son-in-law, Dr. Robert Preston, "in trust for my daughter, Martha E. Preston, his wife, during her life for her sole and separate use, and for the use of her children, if any, after her death," a certain tract of land.

Provision is made in paragraph 9 for the occupancy by Dr. Preston of the land therein devised "without accountability for rents or for the use and occupation" thereof "during his life if my daughter, Martha, should leave a child or children at her death, or during the life of his said wife if she should die without children or descendants." The language of this provision, except for names, is practically identical with the corresponding provision in paragraph 7, hereinbefore quoted

Paragraph 10 reads in part as follows:

"10. I devise to my son-in-law, Albert C. Pendleton, trustee, for my grandson, James Sheffey Pendleton" (a certain tract of land) * * "to hold as trustee for my said grandson * * till my said grandson is twenty-one years of age. * * If my said grandson should live till he attains the age of twenty-one years, he is then to have full possession of said land to hold to him and his heirs. Should he die without issue the said land shall revert to my heirs at the death of his father, the said A. G. Pendleton, to whom in that event I devise the land during his life."

By paragraph 11 he gave his wife the power to devise the residence property, devised to her for life in paragraph 1, to any of her children and grandchildren, but further provided: "Should she fail to devise it by will, said house and lots shall pass at her death to our children and their heirs, the descendants of such as are or may be dead to take the shares their deceased parents would take if living."

Paragraph 16 reads in part as follows:

"16. At the death of my beloved wife I direct that all the balance of lands adjoining the town of Marion on the north and south sides be divided, among all my children and their descendants, or that my executor with the consent of a majority of my children * * * sell * * * the same * * * the proceeds to be equally divided among my children and their descendants, they taking the shares of their parents * *."

The court, by its decree entered June 13, 1929, decreed, so far as is here material, as follows:

"It is hereby adjudged, ordered and decreed:

"First: James W. Sheffey, Sr., died intestate as to the remainder interest in the 'Bowen and Byars' farm after the termination of the trust estate created by the will of said James W. Sheffey, Sr., for the benefit of Virginia W. Haller * *;

"Second: The said remainder interest in said farm, at the death of said James W. Sheffey, Sr., descended to his heirs at law in accordance with the provisions of the statute of descents and distributions, subject to the said trust estate, and subject further to be divested by the birth of a child or children to said Virginia W. Haller;

"Third: Said trust estate being now terminated, and the possibility of the birth of a child or children to said Virginia W. Haller being now removed by her death without issue, the contingent interest, which, at the death of said James W. Sheffey, Sr., descended to his heirs at law, now becomes absolute in fee simple through the death of said Virginia W. Haller without issue;

"Fourth: The heirs at law of said James W. Sheffey, Sr., determined as of the date of his death in accordance with the statute of descents and distributions, and the heirs of such of them as may be dead, are now vested, *per stirpes*, with fee simple title to said farm;

"Fifth: Inasmuch as seven children of said James W. Sheffey, Sr., were, at his death, either alive or had living descendants, a full child's share in said farm consists of an undivided one-seventh interest and the undivided one-seventh interest of said Virginia W. Haller passes under the provisions of her will."

From said decree the appellants appeal, alleging that the court erred in not having sustained their contention, and decreed accordingly.

The argument of the appellants as stated by their counsel in their brief is:

"That under clause 7 of the will the testator, James W. Sheffey, devised the land to Mrs. Haller as her equitable separate estate for life and at her death to her children, if any; that it was a devise of the entire interest in the land; that the fact that the remainder was devised to the unborn children of Mrs. Haller, persons not in being, left in the testator and his heirs what is known in law as 'a possibility of a reverter' which is not an estate or an interest in land, but only the possibility that an estate might arise in the future upon the happening of an uncertain event; that such an expectancy is never vested and cannot pass by either will or deed, and therefore was not such an estate or interest in land as could be transmitted directly by the testator either by devise in the residuary clause or by inheritance; that when the contingency happened and the estate arose, the heirs of James W. Sheffey entitled thereto, were those who could answer to the description of his heirs at the time of the happening of the contingency, and that his grandchildren being the nearest class in heirship were entitled to the property *per capita,* and his great-grandchildren take the share of their father or mother, *per stirpes.*"

The contention of the appellants is not well made. It is based upon three premises, all of which are false. (1) What remained after the devise in paragraph 7 of James W. Sheffey's will was a *reversion* and not a *possibility of reverter.* (2) A possibility of reverter at common law passed by descent cast in accordance with the same rules of law that were applicable to technical estates of inheritance, *i. e.,* were inheritable, and are inheritable in Virginia under and in accordance with the provisions of the Virginia statutes of descents (chapter 123, Code 1849; chapter 213, Code 1919, sections 5264–5278). (3) Though possibilities

of reverter were inalienable at common law by deed or will, they are alienable by both deed and will under the provisions of the Virginia statutes (chapter 116, section 5, and chapter 122, section 2, Code 1849; section 5147 and 5227, Code 1919).

We shall discuss these three propositions in the inverse order of that above stated; and that there may be a clear comprehension of the issues raised by the contention of the parties, the conclusions which we have reached, and the reasons therefor, we shall, at the risk of restating definitions and rules of law which are well known, and of being somewhat prolix, consider the natures of and distinctions between remainders, vested and contingent, reversions, executory devises, and possibilities of reverter, and the rules of the common law applicable to the alienation and transmission by inheritance of these several classes of expectancies.

The definitions of vested remainders, contingent remainders and executory devises are so well known that we shall not repeat them here. The distinctions between a remainder, a reversion and a possibility of reverter are well stated by Mr. Minor in his work on real property, as follows (italics Mr. Minor's):

■ "A remainder is defined to be 'what is *left*' of an *entire grant* of lands or tenements after a *preceding part* of the *same grant or estate* has been disposed of in possession, whose regular *expiration* the remainder must await." 1 Minor on Real Prop. (2d ed.), section 702, page 916.

■ "A reversion is the remnant of an estate *continuing in the grantor*, undisposed of, after the grant of a part of his interest. It differs from a *remainder* in that it arises by *act of the law*, whereas a remainder is by *act of the parties*. A reversion, moreover, is the remnant *left in the grantor*, whilst a remainder is the remnant of the whole estate disposed of, after a preceding part of the same has been given away." 1 Minor on Real Prop. (2d ed.), section 769, page 1005.

■ "A distinction is made * * between a *reversion* which is an estate *in praesenti*, although to be enjoyed *in futuro*, and capable of being transmitted by descent, devise, or grant, and a *mere possibility of reverter*, such as before the statute *de bonis conditionalibus* existed in the case of *fees conditional*, and now exists in all cases where the fee is limited in contingency, as in base or qualified fees, and in grants to a perpetual corporation *during its existence.*

"The basis of the distinction lies in the fact that *reversions* are always *vested* estates corresponding to *vested remainders*, while the mere possibility of a reverter is always *contingent* and corresponds to a contingent limitation." 1 Minor on Real Prop. (2d ed.), section 769, page 1006.

■ "They" (possibilities of reverter) "arise at common law upon a conveyance in fee conditional or upon the creation of a fee qualified, or upon the conveyance of a *fee simple upon condition subsequent*. In none of these cases is there any *vested* interest in the land left in the grantor by way of *reversion*, but only a bare *possibility* that the land will return to him, upon the happening or failure to happen of the various *contingencies* upon which the estate granted may depend. The interest of the grantor is purely contingent." 1 Minor on Real Prop. (2d ed.), section 780, page 1012-1014. It should be noted, however, that if the qualified fee be determinable upon an event which is *certain* to happen, there remains a true reversion and not a possibility of reverter. 1 Washburn (6th ed.), section 169–170.

■ By the statute *de bonis conditionalibus* (Westminster II, 13 Edw. I, chapter 1), the old common law fee conditional was converted into a fee tail, after which there existed a reversion, and not merely a possibility of reverter. 1 Minor on Real Prop. (2d ed.), section 172, page 232. Hence, under the common law in Virginia a possibility of reverter, as distinguished from a reversion, for all practical purposes, may be said to arise only where a grant or devise

creates, (1) a base or qualified fee limited to determine upon a contingency which may never happen, or (2) conveys a fee simple limited upon a condition subsequent.

■ Vested remainders and reversions are actual estates *in praesenti*, 4 Kent's Com. 205; 1 Minor on Real Prop. (2d ed.), page 1006.

Contingent remainders and executory devises appointed to arise upon a contingency, as for instance, a devise "to A and his heirs, but if A dies under twenty-one and unmarried, to B and his heirs," are not estates properly speaking, but only a possibility of having an estate; though they are said not to be "naked possibilities" such as that of an heir expectant to the estate of his ancestor, and are sometimes referred to as "possibilities accompanied with an interest." 1 Tiffany, Real Prop. (1920 ed.), section 147-b, page 525; 2 Washburn (6th ed.), section 1734, 1761, 1762; Williams, Real Prop. (17th ed.), 423; 1 Minor on Real Prop. (2d ed.), 710; Graves, Notes on Real Prop., section 190, note.

■ A possibility of reverter, as hereinbefore defined, is not an estate, present or future, but a possibility of having an estate. In the case of a base or qualified fee expiring by its own contingent limitation, it is a right to have the fee simple in possession contingent upon the determination of the fee defeasible. In the case of a fee limited upon a condition subsequent it is a contingent right of re-entry upon condition broken.

■ At common law where there was a possibility of reverter after a fee limited to determine upon the happening of a contingency, no re-entry was necessary to vest the estate in possession in the person entitled thereto upon the happening of the contingency (*First Universalist Society* v. *Boland*, 155 Mass. 171, at p. 174, 29 N. E. 524, 15 L. R. A. 231); but where the possibility of reverter was after a fee limited upon a condition subsequent, upon the breach of a

condition subsequent, the possibility of reverter did not *ipso facto* vest in possession in the creator of the fee, or his heirs, but remained unimpaired in the grantee or devisee of the fee until entry made. Graves, Notes on Real Prop., section 277.

The text-books and cases sometimes refer to a possibility of reverter, as hereinbefore defined, as a "mere" or a "naked possibility" of reverter in contradistinction to a contingent remainder or executory devise which they refer to as a possibility coupled with an interest (1 Tiffany, Real Prop. [1920 ed.], section 132; 2 Washburn [6th ed.], section 1512); and some of the American cases seem to go so far as to hold that a possibility of reverter is not a right, and to place it in the same category of expectancies as that to which the expectation of an heir expectant to receive the estate of his ancestor belongs; but so far as we have been able to discover in our research, no English case has held that a possibility of reverter is not a right, or classified it as an expectancy falling in the same category as the expectancy of an heir expectant, which is not in any sense a right or claim.

With these definitions and distinctions in mind, we come now to the consideration of the assignability by deed and the devisability of possibilities of reverter.

But before entering upon a discussion of this subject, we would observe that alienability and inheritability are distinct characteristics, which, though commonly concomitant, are not necessarily coexistent; and that the existence of or absence of either characteristic is not determinative of the existence of or absence of the other. Some confusion seems to have arisen in some of the cases dealing directly, or indirectly, with these questions from the failure clearly to recognize this fact.

At common law vested remainders and true reversions, being actual estates, could be aliened by any of the

conveyances operating by force of the statutes of uses, and were devisable under the early statutes of wills. 1 Tiffany, Real Prop. (1920 ed.), section 147; 4 Kent's Com. 205.

Contingent remainders, not being actual estates, but the possibility of having an estate, were inalienable at common law. They were made devisable by early English statutes, but they remained inalienable by grant in England until 8 and 9 Vict., chapter 106, section 6; and were not assignable by deed in Virginia until the revision of the Code in 1849 (chapter 116, section 5, Code of Virginia 1849; Rep. Revrs. 1849, page 602; section 5147, Code of Virginia 1919). A contingent remainder "could, however, be passed by fine or released for the benefit of the reversion; and in equity an assignment for a valuable consideration was recognized and enforced." Graves, Notes on Real Prop., section 189–190, page 217, and note; Fearne, Remainders, 365–366; Tiffany, Real Prop. (1920 ed.), section 147-b; Williams, Real Prop (17th ed.), 422–423.

So also an executory devise, which was not an estate but a possibility of having an estate, was not a subject of grant at common law, though it was devisable under the early English statutes. 2 Washburn, Real Prop. (6th ed.), section 1761.

A possibility of reverter, as hereinbefore defined, could not be granted or devised, at common law, but the right of reverter might be released to the person holding the estate in fee upon which the possibility of the reverter depended; and such release might be made either by the creator of the estate in fee upon which the possibility of reverter depended, or if he had died, by the person who at the time of the release answered the description of his heir. 4 Kent's Com. 122–123; 2 Washburn, Real Prop. (6th ed.), section 1512, page 498; 1 Tiffany, Real Prop. (1920 ed.), section 132; 1 Minor on Real Prop. (2d ed.), section 780, page 1014; Graves, Notes on Real Prop., section 275, at

page 386; *Nicoll* v. *New York, etc., R. Co.*, 12 N. Y. 121; *Miller* v. *Emans*, 19 N. Y. 384; *Atkins* v. *Gillespie*, 156 Tenn. 137, 299 S. W. 776. The reason for the rule making possibilities of reverter inalienable by grant or devise is well stated by Mr. Minor in his work on real property (2 Minor on Real Prop. [2d ed.], section 523), and in a copious note on the transferability by deed or devise of a right of entry after condition subsequent broken in 60 L. R. A. at pages 750–764, which is quoted in part in the footnote.[1]

While the right of entry upon condition subsequent broken was made assignable by 32 Hen. VII, chapter 34, when the estate limited upon condition subsequent was an estate for life or for years, in England a right of entry upon condition subsequent broken remained not devisable until in 1837 when by the wills act of 1 Victoria (1 Vict., chapter

---

[1]. In a note in 60 L. R. A. the commentator says at page 764:

"Where an estate in land is granted, whether for years, for life, or in fee, the existence of a condition subsequent lessens in no way the quantity of the estate granted. The grantor is devested of the entire estate of the term or the fee, and the grantee is invested with the same estate. The effect of the condition is simply that, if a breach shall occur, the grantor shall have a right to re-enter and thereby become revested with his former estate. Before breach this is regarded as a mere possibility, coupled with no interest in the land, and therefore no more transferable by act of the grantor than the possibility that he to whom he has conveyed an estate may voluntarily reconvey. The death of the grantor, however, does not extinguish the possibility, and the right to take advantage of it passes to his heir. After breach of the condition, what was before a mere possibility becomes a right to secure a revesting of the former estate by entry, or by action at law. Until such entry or action the quantity of the estate of the grantee is still unimpaired. If the right of entry is never exercised, the estate remains as before. The grantee still has possession with all the advantages which by the common law belong to possession. Under feudal conditions, he who was out of possession was likely to be tempted to part with his claim to those who might gain possession by force or favor, rather than by right. To avoid this, and to discourage maintenance, the common law forbade the transfer of rights of entry. Not only was a deed purporting to convey a right of entry ineffective to transfer the right to the grantee, but, by virtue of the forfeiture imposed in the early statutes as a penalty for an attempted transfer of such a right, the deed operated to destroy the right in the grantor. There was, however, nothing in the spirit of the law or the letter of the statutes to prevent a release of the right by the grantor to the grantee or one claiming under the grantee, and such a release operated to extinguish the possibility of a right if before breach, or the right of entry if after breach. In most of the States the common-law rule, as stated above, so far as applicable to grants in fee upon condition, is still in force."

26, section 3) "all rights of entry for condition broken, and other rights of entry" were made devisable; and was not assignable by deed until in 1845 by 8 and 9 Vict., chapter 106, section 6, it was provided "a right of entry, whether immediate or future, and whether vested or contingent, may be disposed of by deed." Graves, Notes on Real Prop., section 275, pages 388–389.

There can be no question that by these two statutes, which are more fully quoted in the foot-note,[2] not only contingent remainders and executory devises, but also possibilities of reverter are made assignable by deed and devisable by will, either before or after the happening of the contingency or the breach of the condition subsequent upon which the possibility of reverter depends.

Prior to the enactment of the Code of 1849, there was no statute in Virginia making contingent remainders, executory devises limited upon a future contingency, or possibilities of reverter assignable by deed, and it was questionable

---

[2] 1 Vict. chapter 26, section 3: "And be it further enacted, that it shall be lawful for every person to devise, bequeath, or dispose of by his will executed in manner hereinafter required, all real estate and all personal estate which he shall be entitled to, either at law or in equity, at the time of his death, and which if not so devised, bequeathed or disposed of would devolve upon the heir at law, or customary heir of him, or, if he became entitled by descent, of his ancestor, or upon his executor or administrator; and that the power hereby given shall extend to all real estate of the nature of customary freehold or tenant right, or customary or copyhold * * *; and also to all contingent, executory, or other future interests in any real or personal estate, whether the testator may or may not be ascertained as the person or one of the persons in whom the same respectively may become vested, and whether he may be entitled thereto under the instrument by which the same respectively were created or under any disposition thereof by deed or will; and also to all rights of entry for conditions broken, and other rights of entry; and also to such of the same estates, interests, and rights respectively, and other real and personal estate, as the testator may be entitled to at the time of his death, notwithstanding that he may become entitled to the same subsequently to the execution of his will."

8 and 9 Vict. chapter 106, section 6: "After the 1st of October, 1845, a contingent, an executory, and a future interest, and a possibility coupled with an interest, in any tenements or hereditaments of any tenure, whether the object of the gift or limitation of such interest or possibility be or be not ascertained, also a right of entry, whether immediate or future, and whether vested or contingent, into or upon any tenements or hereditaments in England, of any nature, may be disposed of by deed."

whether the Virginia statute of wills made possibilities of reverter devisable, though in *Watts* v. *Cole*, 2 Leigh (29 Va.) 653, at page 664, Green, J., expresses the opinion that the possibility of reverter existing after a base or qualified fee is devisable under the Virginia statute of wills of 1785 below quoted.

By Code 1819, chapter 99, page 369, section 28, it was provided: "Hereafter an estate of freehold or of inheritance may be made to commence *in futuro* by deed in like manner as by will:" The act concerning wills enacted in 1785 (Acts 1785, chapter 61, section 1 [12 Hening's St. at Large, page 140]; Code 1819, chapter 104, section 1, page 375) provided, so far as is here material, as follows: "Every person * * shall have power * * by last will and testament in writing, to devise all the estate, right, title, and interest, in possession, reversion, or remainder, which he hath, or at the time of his death shall have, of, in or to lands, tenements, or hereditaments, or annuities, or rents charged upon issuing out of them."

By chapter 103, Code 1819, entitled "an act against conveying or taking pretensed titles" it was also provided: "That no person shall convey or take * * any pretensed title to any lands or tenements unless the person conveying * * or those under whom he claims, shall have been in possession of the same, or of the reversion or remainder thereof, one whole year next before;" etc.

When the revisors of the Code of 1849 came to revise the statutes above quoted, they had before them both the English statutes above mentioned; and their report shows that they intended to incorporate the provisions of these two English statutes into the proposed statutes reported by them to the General Assembly as chapter 122, section 2, and chapter 116, section 5. Report Revisors 1849, page 602 and page 623.

Section 3 of the wills act of 1 Victoria is very long and was reported by the Revisors in a shortened form as chap-

ter 122, section 2. This section was enacted by the General Assembly in almost the same words as reported by the Revisors, and has remained unchanged to the present time (Code 1849, chapter 122, section 2; Code 1887, section 2512; Code 1919, section 5227). It reads as follows:

"Every person, not prohibited by the following section, may by will dispose of any estate to which he shall be entitled at his death, and which, if not so disposed of, would devolve upon his heirs, personal representative, or next of kin. The power hereby given shall extend to any estate, right or interest, to which the testator may be entitled at his death, notwithstanding he may become so entitled subsequently to the execution of the will."

With reference to this section the revisors make the following comment: "The late English statute of wills (7 Wm. IV and 1 Vict., chapter 26) * * has, we think, introduced some valuable improvements. In the preparation of this chapter we have adopted nearly the whole of that statute for the double reason that we approve its provisions, and that the adoption here of those provisions will give us the benefit of the English decisions upon them." Report of Revisors, 1849, page 623.

It is manifest that the word "estate" is not used in any technical sense in the first sentence of this section, for in the next sentence it is provided: "The power hereby given shall extend to any estate, *right or interest* to which the testator may be entitled at his death," etc. Graves, Notes on Real Prop., page 393.

As reported by the Revisors, chapter 116, section 5, was almost the very words of 8 and 9 Vict., chapter 106, section 6, except that they added "or will" to make the section apply to deeds and wills alike; and reads as follows:

"A contingent, an executory and a future interest, and a possibility coupled with an interest in any real estate, whether the object of the gift or limitation of such interest or possibility be or be not ascertained, and a right of entry,

whether immediate or future, and whether vested or contingent, into or upon any real estate, may be disposed of by deed or will. Any estate may be made to commence *in futuro*, by deed, in like manner as by will."

The Revisors in their note to this section point out that they have purposely omitted the provisions in the Code of 1819, page 375, prohibiting conveying or taking pretensed titles (Report Revisors, 602, note to section 5); and add: "The provisions of the late English statute, adopted in the section to which this note is appended, accomplishes this object" (*i. e.*, the repeal of the law against the sale of 'pretensed titles'), "and at the same time changes some other antiquated rules which created impediments in the way of a man's transferring interests of a certain kind though they belonged to him."

As enacted by the General Assembly, chapter 116, section 5, Code 1849, which, without change of language, remains the statute law of Virginia (Code 1887, section 2418; Code 1919, section 5147), reads as follows: "Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence *in futuro*, by deed, in like manner as by will. And any estate which would be good as an executory devise or bequest, shall be good if created by deed."

Unquestionably under these sections contingent remainders and executory devises may be disposed of by deed or will. *Medley* v. *Medley*, 81 Va. 265; *Young* v. *Young*, 89 Va. 675, 17 S. E. 470, 23 L. R. A. 642; *Smith* v. *Smith*, 112 Va. 617, 72 S. E. 119; *Prince* v. *Barham*, 127 Va. 462, 103 S. E. 626.

In commenting upon this section Moncure, J., in *Carrington* v. *Goddin* (1857), 13 Gratt. (54 Va.) 587, at page 599, which was a case involving the right of a person having interest in land held adversely by another to convey the same (which interest could not be conveyed at common

law), says, at page 600: "The court has changed the common law rule by declaring that 'any interest in or claim to real estate may be disposed of by deed or will,' chapter 116, section 5, page 500 * *. They" (*i. e.*, the Revisors) "recommend the adoption of a section similar to 8 and 9 Vict., chapter 106, section 6, in which 'a right of entry' is expressly named. Instead of adopting that section, which is complicated in its details, the legislature enacted the provisions above quoted. Their object was to use brief and plain terms, which would be at least as extensive in their meaning as the terms used in the statute of Victoria. They could not have used more comprehensive terms than they did. A right of entry is certainly 'an interest in or claim to real estate,' and may therefore 'be disposed of by deed or will.' " See also, *Mustard* v. *Wohlford*, 15 Gratt. (56 Va.) 329, at p. 339, 76 Am. Dec. 209; *Dobson* v. *Culpepper*, 23 Gratt. (64 Va.) 352, at p. 363.

In *Heuser* v. *Belvin*, 118 Va. 346, at p. 358, 87 S. E. 594, 598, Cardwell, J., quotes with approval the language of the annotator of the Code of Virginia, 1904, who says, referring to section 2418, Code 1887 (section 5147, Code 1919): "Under this section every conceivable interest in or claim to real estate, present or future, vested or contingent, and however acquired, may be disposed of by deed or will."

Mr. Minor, in considering these sections of the Code, says: "While under the Virginia statute providing that 'any interest in or claim to real estate may be disposed of by deed or will,' a grantor's right of re-entry *after condition* broken may doubtless be conveyed, it is still a question, even under this statute, whether the mere contingent possibility of a right of re-entry *before breach of the condition*, is such an interest as can be disposed of by deed or will, though it would seem, from analogy to the case of contingent remainders, which also are *mere possibilities*, that it

should fall within the statute above mentioned," *i. e.*, section 5147, Virginia Code 1919. 1 Minor on Real Prop. (2d ed.), section 780, at page 1014, and section 523.

In commenting on the assignability and devisability of possibilities of reverter under this statute, Mr. Graves in his work, Notes on Real Property, whose reasoning on this subject we have so largely adopted herein, says in his text and notes at page 392–393:

"The language of these enabling acts" (chapter 116, section 5, now section 5147, Code 1919, and chapter 122, section 2, now section 5227, Code 1919) "seems broad enough to cover not only the alienation of a right of entry of an owner out of possession of his land, of which another has adverse possession * * but the alienation of a right of entry, before or after breach, by a grantor of land on condition subsequent." Graves, Notes on Real Prop., page 392.

"The form of the statute" (chapter 116, section 5, Code 1849; section 5147, Code 1919) "as enacted by the Virginia legislature is: 'Any interest in or claim to real estate may be disposed of by deed or will'—a change, it is believed, made for the sake of brevity, and not altering the effect of the longer form," *i. e.*, that reported by the Revisors. Graves, Notes on Real Prop., page 392, note 1.

"Under the familiar rule of construction, section 2512" (chapter 122, section 2, Code 1849; section 2512, Code 1887; section 5227, Code 1919) "and section 2418" (chapter 116, section 5, Code 1849; section 2418, Code 1887; section 5147, Code 1919) "are to be construed together * *." It is hardly conceivable that the Revisors desired to restrict the scope of the English statute conferring the power of alienation; and section 2418 (Code 1887) is broad enough alone to render all rights of entry alienable by deed or devise. This being so, it was unnecessary to confer the power again in express terms by the wills act; but it is

noticeable that section 2512" (Code 1887), "taking the two sentences together, gives the power to dispose, by will, of any right to which a testator is entitled at his death, and which, if undisposed of, would 'devolve' upon his heirs." Graves, Notes on Real Prop., page 393.

Mr. Graves reaches the conclusion that the sections of the Code here under consideration authorize the alienation, by deed or by will, of a right of entry on a grant or devise of a fee simple on condition subsequent, either before or after breach of the condition. Graves, Notes on Real Prop., page 392, note 1, and 393; and adds that such power of disposition is "demanded by a sound public policy under the improved conditions of modern civilization."

■ Upon the reasoning above stated, we are of opinion that under the provisions of chapter 116, section 5, and chapter 122, section 2, of the Code of 1849 (sections 5147 and 5227, Code 1919) a possibility of reverter, whether it depends upon a base or qualified fee or upon a fee simple limited upon a condition subsequent, is alienable by either deed or will, at any time, either before or after the happening of the contingency or the breach of the condition subsequent upon which the possibility of reverter depends.

We turn now to a consideration of the inheritability of possibilities of reverter.

The person to whom a vested remainder in fee was limited, and the creator of the particular estate upon which a reversion depended, had an actual estate which he could transmit at common law to his heir if he died before the particular estate came to an end. 1 Tiffany, Real Prop. (1920 ed.), section 147-a; Tiedeman on Real Prop., section 387; 1 Minor on Real Prop. (2d ed.), section 764 and 769.

Though a contingent remainder in fee is not an estate but the possibility of having an estate, the donee thereof could, at common law, transmit it to his heir if he died

before the contingency upon which it was limited happened. Fearne, Remainders, page 264; Graves, Notes on Real Prop., section 189.

So also, though an executory devise of a fee simple is not an estate, but the possibility of having an estate, the person to whom it was devised could at common law transmit it to his heir if he died before the contingency upon which it was limited happened. 2 Washburn (6th ed.), section 1761; Fearne, Remainders, 448–449.

As vested remainders and reversions could be aliened by grant or devise and contingent remainders and executory devises, after an early date, could be devised by the donee thereof, they might be acquired by *purchase* from any person entitled thereto; and when acquired by purchase, the purchaser thereof (if he died during the continuance of the particular estate upon which the remainder or reversion depended, or before the happening of the contingency upon which the executory devise was limited) could transmit the remainder, reversion or executory devise to *his* heir.

But if a remainder, vested or contingent, dependent upon an estate of freehold was cast by *descent* upon the heir of the donee of the remainder, or a reversion dependent upon an estate of freehold was by descent cast upon the heir of the creator of the particular estate upon which the reversion depended, though such heir might release it to the holder of the particular estate or alien it by grant or devise during the continuance of the particular estate, yet, if he died during the continuance of the particular estate, without having released, conveyed or devised the remainder or reversion, he could not at common law transmit it to *his* heir.

This was true because under the common law relating to real estate no one could be a *stirps* from whom descent could be derived, unless he had been actually seised or was the last purchaser; and there could be no actual seisin and

possession of a remainder or reversion dependent upon a life estate or other particular estate of freehold during the continuance of the particular estate, for entry was necessary to gain an actual seisin, and the remainderman or reversioner could not enter during the existence of the particular estate.

Hence, during the existence of a particular estate of freehold, the heir upon whom a vested remainder, or reversion, depending thereon was by descent cast, was not so seised as to constitute him the *possessio fratris* or *stirps* of descent, if he died pending the particular estate. Upon his death, without having released, granted or devised such remainder or reversion, it passed not to *his* heir, but to him who then answered the description of heir of the person last seised, or heir of the last purchaser, as the case might be; and so on through a line of successive heirs of the person last seised, or of the last purchaser, until (if the remainder or reversion had not been released, granted or devised by any one in the line of succession) the property, upon the termination of the particular estate, vested in possession in the person who then answered the description of heir of the person last seised, or of the last purchaser, irrespective of all who, in the meantime, may have been entitled to the same as heirs and may have possessed the power to release, grant or devise it. 4 Kent's Com. 385–388; 3 Washburn, Real Prop. (6th ed.), section 1847; 2 Tiffany, Real Prop. (1920 ed.), page 1892; Tiedeman, Real Prop., section 387; *Cook* v. *Hammond* (U. S. Cir. Ct.), Fed. Cas. No. 3, 159, 4 Mason, 467, opinion by Story, J; Fearne, Remainders, page 286; Graves, Notes on Real Prop., section 189–190.

A like rule applied in the case of an executory devise, that person being entitled to the estate in possession who could show himself the heir of the original donee, or the last purchaser, at the time the estate devised was ready to

come into possession. 2 Tiffany, Real Prop. (1920 ed.), page 1892; Fearne, Remainders, 448–449.

As has been said, neither a contingent remainder nor an executory devise is an estate; but it seems never to have been doubted that contingent remainders in fee and executory devises of fees were inheritable, that is, were by descent cast upon the heir; and we have found no suggestion that an heir taking a contingent remainder or an executory devise took the same by representation and not by inheritance. In the case of *Barnitz's Lessee* v. *Casey*, 7 Cranch 456, 469, 3 L. Ed. 403, Justice Story says: "It is very clear that contingent remainders and executory devises at common law are transmissable to the heirs of the party to whom they are limited if he chance to die before the contingency happens." See also *Buck* v. *Lantz*, 49 Md. 439.

We have not been cited to, nor have we found, any early English cases or text-writers discussing the specific question: Are possibilities of reverter inheritable or not at common law? However, all the authorities agree that at common law, if the creator of a fee upon which a possibility of reverter depended died, without having released the possibility of reverter to the holder of the estate in fee, upon the determination of the fee by its own limitation, or by the breach of a condition subsequent, the person then answering the description of heir of the creator was entitled to enter and hold the fee simple estate in possession, unless in the meantime some person, who at the time of the release answered the description of heir of the creator, had released the possibility of reverter to the holder of the fee; and that this was true because of the common-law rule that no one could be a *stirps* from whom descent could be derived unless he had been actually seised or was the last purchaser. *North* v. *Graham*, 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 126 Am. St. Rep. 189;

*Presbyterian Church* v. *Venable*, 159 Ill. 215, 42 N. E. 836, 50 Am. St. Rep. 159; *Adams* v. *Chaplin*, 1 Hill Eq. (S. C.) 265; *Deas* v. *Horry*, 2 Hill Eq. (S. C.) 244; *Pearse* v. *Killian*, McMullin Eq. (S. C.) 231; *Vaughan* v. *Langford*, 81 S. C. 282, 62 S. E. 316, 317, 128 Am. St. Rep. 912, 16 Ann. Cas. 91; *Pond* v. *Douglass*, 106 Me. 85, 75 Atl. 320; *Puffer* v. *Clark*, 202 Mich. 169, 168 N. W. 471; *Nicoll* v. *N. Y. & E. R. Co.*, 12 N. Y. 121; *Upington* v. *Corrigan*, 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794; *Trustees of Presbyterian Church* v. *Putnam*, 221 App. Div. 502, 224 N. Y. S. 651; *Atkins* v. *Gillespie*, 156 Tenn. 137, 299 S. W. 776; *Buck* v. *Lantz*, 49 Md. 439; *Conner* v. *Waring*, 52 Md. 724; Tiedeman on Real Prop., section 358; 1 Tiffany, Real Prop. (1920 ed.) 474; 23 R. C. L., Reversions, section 9, pages 1104–1105.

It is to be noted, however, that in spite of this fact some of these cases go so far as to hold that a possibility of reverter is not inheritable, with which view we are not in accord.

A possibility of reverter not being the subject of a grant or devise, no one could be the last purchaser thereof, and, therefore, the descent of the person entitled had to be traced from the creator of the fee upon which it was dependent as the person last seised.

As any person who, at the time of the release, answered the description of heir of the creator of the fee upon which a possibility of reverter depended could release it to the holder of the estate upon which it depended, it would, therefore, seem clear that, upon the death of the creator of the estate upon which the possibility of reverter depended, it passed immediately to him who then answered the description of heir of the creator; and upon his death to the person then answering the description of heir of the creator; and so on through a successive line composed of the heirs at the time being of the creator of the estate in fee until upon the determination of the estate in fee it

vested in possession in him who then answered the description of heir of the creator.

Let us now assume that A, having created an estate of freehold, after which he had a reversion and also an estate in fee, after which there was a possibility of a reverter, and being the donee of a vested remainder dependent upon an estate of freehold, a contingent remainder in fee, and an executory devise of a fee, died without having become entitled to possession under any of them, without having released any of them, and without having granted or devised any of them. At common law, upon A's death all such expectancies passed to his heir at law, B; and if B subsequently died without having become entitled to possession under any of them, without having released any of them, and without having granted or devised any of them, then upon his death they all passed, not to the heirs of B, but to the person who then answered the description of heir of A; and so on, in the absence of any release, grant or devise, they passed through a succession of persons answering the description of heirs of A until some person at the time answering the description of heir of A became entitled to the possession in each case.

Though the said several expectancies differ in nature (some being estates and some not), and though the power of those in the line of succession to alien the several expectancies by grant or devise differed; yet for the same reason all said expectancies passed in the same manner and through the same chain of succession, each person in which had the power to release the same, and if at any given time rights of possession accrued under any two or more of said expectancies, the fee simple estates vested in possession in the same person.

All the authorities agree that the vested remainder, the reversion, the contingent remainder, and the executory devise passed by inheritance, i. e., were inheritable, at

common law. But despite the foregoing facts some of the cases, apparently influenced by the fact that a possibility of reverter was inalienable and is not a technical common law estate or a right to anything *in praesenti*, have held, or stated as a dictum, that a possibility of reverter was not inheritable at common law; and that the person who became entitled to the possession under a possibility of reverter took by representation, and not as the heir of the creator of the estate upon which the possibility of reverter depended. *Adams* v. *Chaplin* (S. C. 1833), 1 Hill Eq. 265; *Deas* v. *Horry* (S. C. 1835), 2 Hill Eq. 244; *Upington* v. *Corrigan* (1896), 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794. See also note to *North* v. *Graham* (below cited), 18 L. R. A. (N. S.) 624, in which the commentator criticises the holding of that case that a possibility of reverter was inheritable at common law.

The anomalies which result from a holding that a possibility of reverter is not inheritable are indicative, we think, of its fallacy. For instance: If X made a devise "to A and his heirs until B returns from Rome, then to C and his heirs in fee simple," we have an executory devise (1 Washburn, Real Prop. [6th ed.], section 1739; 1 Minor on Real Prop. [2d ed.], section 788, at page 1027), which, if C died during the lifetime of B, and before he returns from Rome, passes *by inheritance* to C's heir. But if, instead of such devise X had granted by deed the same property "to A and his heirs until B returns from Rome," there would have remained only a possibility of reverter (1 Washburn, Real Prop. [6th ed.], section 170), which, under the view of *Adams* v. *Chaplin* and the other authorities above listed, is not inheritable.

The possibilities that C and X will have in possession an estate in fee upon the determination of the fee defeasible are neither of them an estate or a right to anything *in praesenti*. They are identical as to the estate which is in

expectancy, as to the probability of coming into possession, and in all other respects, except as to the way in which they have been created, and as to their alienability by grant or deed. Yet, without good reason, we think, the above authorities would, in the one case, hold the executory devise to be a possibility coupled with an interest and inheritable, and in the other case the possibility or reverter to be a naked possibility and not inheritable.

Upon reason and principle we are of opinion that there is no difference in the ways in which, at common law, a contingent remainder, an executory devise and a possibility of reverter were transmitted by an ancestor to his heir; and that at common law a possibility of reverter is an inheritable right which passed by descent cast to the person who at the time of the happening of the contingency upon which it depended then answered the description of heir of the creator of the fee upon the determination of which it depended; and that such person took as heir and not by representation. This is the conclusion which seems to have been reached by the Supreme Court of Illinois in *North* v. *Graham*, 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 126 Am. St. Rep. 189. It is in accord with principle and reason, and is not in conflict with any English or Virginia case to which our attention has been called.

The Virginia statute of descents was originally enacted in 1785 (Acts 1785, chapter 60 [12 Hening's St. at Large, page 138]), and except for a few amendments, which are immaterial to the subject here under discussion, has remained unchanged. This statute (section 5264, Code 1919) reads in part as follows:

"When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, as are not alien enemies, in the following course * *." (Chapter 123, section 1, Code 1849; section

2548, Code 1887; section 5264, Virginia Code 1919, as amended by Acts 1922, page 861, chapter 492; Acts 1923, [Ex. Sess.], page 166, chapter 143.)

■ It has been repeatedly held in Virginia that the statute of descents of 1785 wholly abrogated the common law rule of primogeniture, the canons of descent, and the rule that no one could be a *stirps* from whom descent could be derived unless he was actually seised or was the last purchaser, *i. e.*, the whole of the common law regulating descents; and substituted therefor an entirely new system applicable to every possible case which can happen, which system is governed by new analogies. 2 Minor on Real Prop. (2d ed.), section 920, pages 1171–1172; *Browne* v. *Turberville*, 2 Call (6 Va.), 390; *Templeman* v. *Steptoe*, 1 Munf. (15 Va.) 339; *Davis* v. *Rowe*, 6 Rand. (27 Va.), page 355; *Medley* v. *Medley*, 81 Va. 265.

■ This statute has heretofore been held applicable to contingent remainders and executory devises limited upon future contingencies, *Medley* v. *Medley*, 81 Va. 265; and we are of opinion that it is applicable not only to technical *estates* of inheritance and contingent remainders, but to every right and claim, vested or contingent, to have or receive *in praesenti* or *in futuro* an estate of inheritance in land which at common law passed by descent cast to the heir, or by operation of law devolved upon the heir, of the person who dies entitled to such right, and therefore includes within its purview possibilities of reverter as hereinbefore defined.

■ We are, therefore, of opinion that in Virginia, upon the death intestate of the creator of a fee after which there is a possibility of reverter, such possibility of reverter immediately descends by inheritance to the person or persons designated by the Virginia statutes of descent (chapter 123, Code 1849; chapter 113 [sections 2548–2561], Code 1887; chapter 213 [sections 5264–5278], Code 1919) as

those to whom his real estate of inheritance shall descend, who may convey the same by deed or devise it by will, or transmit it by inheritance to his or their heirs in accordance with the Virginia statutes of descents.

It would seem to be inescapable that unless section 5264 is applicable to possibilities of reverter, either by its express terms or by analogy, then a possibility of reverter still passes in Virginia in accordance with the old English common law of primogeniture, canons of descent, and rule of *stirps*, hereinbefore stated, to the person who, at the time of the termination of the estate in fee upon which the reverter depends, answers the description *at common law* of .the heir of the creator of the fee which has determined. For this is the only statute in Virginia which can be said to abolish the rules of the common law; and except to the extent·that they are abolished by said section the English common law of primogeniture, canons of descent, and rule of *stirps* are the law of Virginia today.

■ However, as we have before indicated, we are of opinion that there remained after the devises made in paragraph 7 of the will of James W. Sheffey·a *reversion*, and not a possibility of a reverter.

Some of the cases and authorities take the view that such a devise to a trustee is a conveyance of a fee defeasible which vests in the trustee the whole estate in fee, subject only to the possibility of a reverter upon the failure of the contingency upon which the remainder is limited (*Buck* v. *Lantz*, 49 Md. 445; 1 Tiffany on Real Prop. [1920 ed.], section 141); but we think that the correct view is that the estate devised to Henry B. Haller in trust was not an estate in fee, but an estate for a life or lives, *i. e.*, for the life of Mrs. Haller, and then for his life, if he survived his wife.

■ The term of the trust estate devised was limited, we think, by the terms of the devise itself, to determine upon the death of Mr. or Mrs. Haller, whichever was the

later survivor; for the testator expressly declares: "My intention is that the said Henry B. Haller shall hold the said tract of land upon the trust herein declared *during his life* if my daughter, Virginia, should leave a child or children at her death, or during her life if she should die without children or descendants." But in addition to this, the purposes of the trust are manifestly to be fully accomplished upon the death of Mrs. Haller, or her husband, whichever happens later; and where not otherwise provided by express provision or by necessary implication a trust estate is by law limited to determine upon the accomplishment of the purposes of the trust. *Cochran* v. *Hiden*, 130 Va. 123, at p. 141, 107 S. E. 708; *Angle* v. *Marshall*, 55 W. Va. 671, 680, 47 S. E. 882; *Doe, Lessee* v. *Considine*, 6 Wall. 458, 18 L. Ed. 869, 873; *Young* v. *Bradley*, 101 U. S. 782, 25 L. Ed. 1044; 39 Cyc., Trusts, pages 95–98; 26 R. C. L., Trusts, section 52, page 1210; 2 Washburn on Real Prop. (6th ed.), section 1577.

At the time of the death of James W. Sheffey, Mrs. Haller had had no child born to her, and hence the remainder devised to her children, if any, was a contingent remainder conditional upon her having children thereafter born to her. *Howbert* v. *Cauthorn*, 100 Va. 649, 42 S. E. 683; *Allison* v. *Allison*, 101 Va. 537, 542, 44 S. E. 904, 63 L. R. A. 920; *C. & O.* v. *Bradford*, 6 W. Va. 220; *Marston* v. *Parrish*, (Va.) Jefferson 1.

Upon a grant or devise of a particular estate limited to determine upon the happening of an event which is certain to happen, with a contingent remainder over, there remains in the grantor or devisor a *reversion*, subject to be defeated by the happening of the contingency upon which the remainder is conditioned. 1 Washburn (6th ed.), section 169; 1 Tiffany on Real Prop. (1920 ed.), section 141; Fearne, Remainders, page 279, *et seq;* Graves, Notes on Real Prop., section 181; 1 Minor on Real Prop. (2d ed.), sections 758

and 720; 23 R. C. L., Remainders, sections 55–57, pages 518–520; *Bigley* v. *Watson*, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679.

As has been heretofore seen, a *reversion* is an inheritable estate which, under the Virginia statute of descents, descends to the heirs of the creator of the particular estate upon which it depends immediately upon his death; and may be by them assigned by deed or devised by will.

From what has been said it follows that unless James W. Sheffey has in his will made a devise over of this 1,400 acre tract of land in the event of Mrs. Haller having no children, then immediately upon his death the reversion (or the possibility of reverter, whichever it be) descended to his five children then living (including Mrs. Haller) and the children of his two deceased daughters, each child taking an one-seventh (1–7) part, and the children of each of the two deceased daughters taking the portion their mother would have taken if living.

This brings us to the contention of the appellees that paragraph 17 of the will of James W. Sheffey is a "residuary devise;" and the devise of the remainder to the children of Mrs. Haller, if any, "having failed through the death of Mrs. Haller without children," section 5239, Code 1919 (which is chapter 122, section 14, Code 1849), "will control the situation and require the property to pass under the residuary clause," *i. e.*, paragraph 17 of said will. Section 5239 reads as follows:

"Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be void, or otherwise incapable of taking effect, shall be included in the residuary devise (if any) contained in such will."

We are of the opinion that this contention is not well made, because it appears from the will that it was not the intention of the testator that the remote contingent ex-

pectancy of the reversion in possession of this 1,400 acre tract of land should be included within the real estate which the executor under paragraph 17 was authorized and directed to sell.

If the devise in paragraph 17 had been "I give any real estate I own which I have not devised one-third to my wife and the other two-thirds to my children and the descendants of such of my children as may be dead," this contention of the appellees would be much stronger than it is; but this is not the case. The language of paragraph 17 is not, strictly speaking, a devise to the executor. It is an authorization of and direction to the executor to sell and convert into personalty (money) "any real estate I own which I have not devised," and the bequest, after the payment of the debts of the estate therefrom, of the common fund arising from the sale of such real estate and from the personal property not specifically bequeathed, one-third to the wife of the testator and two-thirds to his children then living at his death, of whom Mrs. Haller was one, and the descendants of such of his children as were then dead.

From the fact that the proceeds of the real estate to be sold were to go into a common fund for the payment of debts, along with the proceeds of the personal property not specifically bequeathed, as well as from other circumstances appearing from the will, it is manifest that the testator intended that there should be a reasonably prompt sale of the real estate which his executor, under paragraph 17, was authorized and directed to sell.

Mrs. Haller was the youngest child of the testator, and a comparatively young woman, it would seem, whose husband was living at the death of the testator. The reversion remaining in the testator after the life estate devised to her was subject to be defeated by her leaving descendants surviving her; and the expectancy that the land devised to

her for life would revert to the testator, or his heirs or devisees, was remote and highly speculative. Similarly, the expectancy that the land devised in paragraph 9 to Mrs. Preston for life with remainder to her children, if any, would revert was also remote and highly speculative. These expectancies could have been of little pecuniary value at the death of the testator.

If it was the intention of the testator to include these expectancies in the real estate which by paragraph 17 he authorized his executor to sell, it must have been his intention that they should be sold as expectancies, for a portion of the money to be derived from a sale thereof was devised to each, Mrs. Haller and Mrs. Preston.

To so construe the language of paragraph 17 as in effect to authorize and direct his executor to proceed to sell these remote contingent expectancies, probably for a song, and divide the proceeds among the beneficiaries under said paragraph, would be, we think, to do violence to the intention of the testator to be gathered from a consideration of the particular paragraph here in question, considered in the light of his whole will.

Where a testator in his will makes devises which leave to him, or his heirs, remote contingent expectancies, such as were created by several of the devises in this will, and then authorizes and directs his executor to sell the real estate owned by him which he has not devised, and bequeaths the proceeds thereof, after the payment of debts, to designated persons, some of whom are persons on whose deaths without issue such expectancies depend, these facts in and of themselves express an intention of the testator that such expectancies shall not be included in the property his executor is authorized to sell, unless there be something in the will to show plainly, without recourse to the presumption against intestacy, that the testator did intend to embrace such expectancies in the property which the executor is authorized to sell.

The conclusion that the testator did not intend to include such expectancies in the real estate which, under paragraph 17, his executor was directed to sell is further supported by the provisions contained in paragraph 10 of the will hereinbefore quoted.

Here in the case of a very similar expectancy the testator has expressly declared that the reverter shall be to his heirs, showing that it was not his intention that such expectancies should pass under paragraph 17.

For the reasons hereinbefore stated we are of opinion that the decree of the circuit court should be affirmed with the exception that the paragraph numbered 4 in the decree of the court should be amended to read as follows, to-wit:

"The heirs at law of James W. Sheffey, Sr., determined as of the date of his death in accordance with the Virginia statutes of descents, taking *per stirpes* reckoned as of the date of his death, or the persons to whom their respective interests in, or claim to, said land may have passed by descent, devise or grant, are now vested with the fee simple title to said farm."

*Decree amended and affirmed.*